UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 07-62870-fra7 |
| K PROPERTIES, LLC, | ) |
| Debtor. | ) |
| | ) Adversary Proceeding |
| GEORGE SIMONS and CARMEN GALES, | ) No. 08-6067-fra |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| ROBERT A. KOLWITZ, | ) |
| | ) MEMORANDUM OPINION |
| Defendant. | ) |

## I. INTRODUCTION

Plaintiffs claim damages arising out of the failure of a construction contract. They allege that the claim arises out of Defendant's fraudulent misconduct, and that the claim should be excepted from discharge under Code §§ 523(a)(2)[1]. The matter came on for trial on February 2, 2010. Having carefully considered the testimony, evidence,

---

[1] Plaintiffs' complaint also contained claims under Code §§ 523(a)(4) and (a)(6), but they were eliminated upon entry of an order by this court on cross-motions for summary judgment.

Page 1 - MEMORANDUM OPINION

and argument of the parties, I find that the Plaintiffs have not sustained their burden of proof, and that their claims in this adversary proceeding should be dismissed.

## II.  BACKGROUND

### A.  Defendant's Business

Robert Kolwitz has been in the construction business since his youth in the 1960's. In 1995, he established himself as a contractor on the Oregon coast, and eventually built a business specializing in the construction of high-end second homes on the central Oregon coast.

Eventually Defendant's business enterprise consisted of his construction operation, incorporated as Kolwitz Construction, and his interest in Picture Book Properties. Picture Book was an LLC consisting of Defendant and one Ellyn Bye. Using funds supplied by Bye and proceeds of prior sales, Picture Book acquired undeveloped residential properties, primarily in the Lincoln County, Oregon, area. The business plan was that Picture Book would then sell properties to people interested in building homes. The homes would be built by Kolwitz Construction.

Over time, Kolwitz invested a considerable amount of his cash in the acquisition of property on speculation through Picture Book. As this practice continued, Kolwitz became heavily dependant on sales by Picture Book to maintain the liquidity needed to continue his construction business. In addition, the construction business was heavily leveraged by use of "leased" labor. Rather than pay for the labor at the time the work was done, Kolwitz relied on an extensive line

// // //

// // //

of credit from the employment agency, thus freeing up cash for other purposes.[2]

Defendant managed to keep his business going by continued construction and sales, often resorting to "robbing Peter to pay Paul," that is, applying immediately available funds to the most immediate demands of creditors, even if the funds and the demands being met were attributable to different contracts or projects. Both Plaintiff, George Simons, a businessman, and Plaintiffs' expert witness acknowledged that this sort of practice, while perhaps not advisable, is not unheard of in the construction business.

The shaky edifice of Defendant's business came crashing down by the end of 2006. The Defendant had placed several parcels acquired by Picture Book in his own name. Ostensibly, this was done in order to facilitate construction lending relating to those properties: the lenders insisted that the borrower be an individual, and not a corporation. This apparently was not Ms. Bye's understanding, and, by December of 2006, she had determined to dissolve Picture Book. In the ensuing dispute, considerable pressure was applied, and Defendant eventually gave in, signing away his interest in most of Picture Book's assets. This loss deprived him of the capital he needed to continue his business. A second blow came several months later when the principal of Coastal Employment passed away. Her successors declined to extend further credit to the Defendant. It soon became impossible for the Defendant to continue, and his business, K Properties, filed for relief

---

[2] The claim of the employment agency, Coastal Employment Services, is for $907,225.

under Chapter 11 of the Bankruptcy Code on October 12, 2007, followed by Defendant's personal bankruptcy on November 16. The cases were consolidated and converted to a case under Chapter 7 on the following January 30.

### B. Simons' Contract

On July 20, 2005, Plaintiffs and Defendant entered into an agreement for the construction by Defendant of a home on property Plaintiffs had just acquired from Picture Book. The contract called for the construction of the home at a fixed price, with additional changes on a cost plus basis. Throughout the short history of the project, there were multiple change orders and regulatory delays which put Defendant considerably behind schedule. (In the contract he had promised to complete the work within 12 months.)

In early 2007, Countrywide Home Mortgages, the construction lender, gave notice that it was terminating the loan due to slow progress. This forced the Plaintiffs to arrange for new financing through a different lender. Eventually three different lenders were involved in the project.[3]

As Defendant's business troubles grew, progress on the project continued to slow. Defendant's cash flow difficulties were exacerbated by the Plaintiffs' failure to fund regular draws for work performed. Concerned with Defendant's slow performance, perceived shoddy workmanship, and – no doubt – Defendant's Chapter 11 bankruptcy,

---

[3] It does not appear that the change in lenders had anything to do with the Defendant. The loan officer at each lender was the same person, an acquaintance of Plaintiffs.

Page 4 - MEMORANDUM OPINION

Plaintiff terminated the contract in October 2007. Defendant, through a business consultant engaged to assist him in the reorganization, asked for funds to continue the project, but the request was denied. Moreover, Plaintiff declined to provide funding to seal up the project against the oncoming winter weather. The last work done on the project by Defendant was on October 17.

### III. ANALYSIS

A. Code § 523(a)(2) excepts from discharge any debt

> (2) for money, property, services or an extension renewal or refinancing of credit, to the extent obtained, --
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

In an action to except a claim from discharge under § 523, the Plaintiff has the burden of proving, by a preponderance of the evidence, each of the elements of the claim. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991).

In order to prove fraud under § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence the following five elements: (1) the debtor made a material representation, (2) with knowledge of its falsity, (3) with the intent to deceive, (4) on which the creditor justifiably relied, and (5) due to which the creditor sustained loss or damage. In re Kirsh, 973 F.2d 1454, 1457 (9th Cir. 1992).

The Plaintiffs do not point to any particular misrepresentation made to them by the Defendant. It is true that the Defendant promised that the construction work would be done within a specified period of time. However, there is no evidence that the Defendant did not intend to

Page 5 - MEMORANDUM OPINION

perform at the time he made the promise, and there is considerable evidence of intervening events which the Defendant could not have anticipated.

Plaintiffs' principal argument is that Defendant was obligated to disclose his business practices to Plaintiffs at the time the contract was entered into. Mr. Simons testified that had he known of Defendant's management practices he would not have entered into the contract. In other words, Plaintiff complains not of representations made to him, but of information not disclosed.

Under the Code, "false pretenses" contemplates circumstances in which a course of conduct – as contrasted with an explicit representation - is intended to mislead. It includes an implied misrepresentation or conduct intended to create or foster a false impression. In re Cole, 164 B.R. 951(Bankr. N.D. Ohio 1993). Moreover, fraud or false pretenses may be discerned where the debtor has failed to disclose facts material to a lender in order to induce the lender to grant credit. In re Roberti, 183 B.R. 991 (Bankr. D. Conn. 1995)(Deliberate nondisclosure of a material fact may amount to a "false pretense" under § 523(a)(2)(A)).

Discharge has been withheld in cases where the defendant acted consciously to mislead the plaintiff by creating a false impression or by withholding crucial information. That is not the case here: there is no evidence that Defendant concealed any information for the purpose of deceiving the Plaintiff. The mere fact that the Defendant had a precarious – not to say reckless – business plan does not by itself give rise to a claim for exception to discharge. Nor does the fact that the Defendant entered into a contract while experiencing financial

Page 6 - MEMORANDUM OPINION

difficulties, absent a showing that he knew at the time that he would be unable to perform. There is no evidence to that effect in this case. Moreover, the information concerning business practices the Plaintiffs now assert should have been disclosed, to the extent it bears on Defendant's financial condition, is only actionable if reduced to writing. Code §523(a)(2)(A) specifically excludes a statement respecting a debtor's or insider's financial condition.

Where a statement involves a debtor's or insider's financial condition, Code § 523(a)(2)(B) excepts from discharge a debt to the extent obtained by:

> (B) use of a statement in writing -
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
> (iv) that the debtor made or published with intent to deceive;

There are two schools of thought regarding which statements come within the parameters of a "debtor's financial condition" for purposes of § 523(a)(2). One holds that a statement of financial condition denotes either a representation of a person's overall "net worth" or a person's overall ability to generate net income, and generally connotes traditional financial statements. See e.g. Jokay Company v. Merdado (In re Mercado), 144 B.R. 879, 885 (Bankr. C.D.Cal. 1992). Other courts have adopted a more expansive definition of "financial condition" and hold that financial condition involves more than statements of profit and loss, balance sheet, and cash flow. See e.e. Engler v. Van Steinburg (In re Steinburg), 744 F.2d 1060 (4th Cir.

Page 7 - MEMORANDUM OPINION

1984)(whether debtor's assets are encumbered is statement of financial condition); In re Barrack, 201 B.R. 985, 987-88 (Bankr. S.D.Cal. 1996)(oral misrepresentations about debtor's ownership of home, monthly income, value of assets, and ability to service a debt concern financial condition). I adopt the more expansive formulation of "financial condition" and find that Defendant's practice of using funds from one project to pay expenses related to another project when required directly involves Defendant's financial condition; any representation made thereof must be in writing in order to come under the rubric of § 523(a)(2). The construction contract between Plaintiffs and Defendant does not contain a representation regarding the earmarking of funds, nor was any other evidence presented at trial of such a representation, written or otherwise, made prior to the time that the parties entered into their agreement.

Even if I were to hold that the alleged implied misrepresentation regarding the Defendant's practice came within the ambit of § 523(a)(2)(A), Plaintiffs' claim requires the Court to find that the Defendant had a duty to disclose his payment practice (i.e. that it was material to the transaction) and that his failure to so disclose was made with the intent to deceive Plaintiffs into entering into the transaction. Based on the evidence presented at trial, I cannot so find. Both the Defendant and the Plaintiffs' expert witness testified that the practice complained of is not uncommon in the construction business. As to Defendant's intent to deceive, Plaintiffs' have submitted insufficient evidence to meet their burden.

// // //

Page 8 - MEMORANDUM OPINION

## IV. CONCLUSION

Plaintiffs have not provided sufficient evidence to meet their burden of proving damages based on state-law fraud[4], which essentially mirrors the definition in § 523(a)(2), and nondischargeability of their debt under Code § 523(a)(2). Accordingly, judgment will be entered for Defendant. Counsel for Defendant should submit a form of judgment consistent with this Memorandum Opinion.

FRANK R. ALLEY, III
Bankruptcy Judge

---

[4] In order to succeed on a claim for fraud under Oregon law, a party must prove the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) and the hearer's consequent and proximate injury. Merten v. Portland General Electric Co., 234 Or.App. 407, 416, 228 P.3d 623 (2010)(internal citation omitted).

Page 9 - MEMORANDUM OPINION